**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| **CONVENTION OF STATES POLITICAL FUND,** ) | |
| ) | |
| Plaintiff, ) | **CASE NO: _____** |
| **v.** ) | |
| ) | |
| ) | **VERIFIED COMPLAINT FOR** |
| **JEFFREY MANGAN,** in his official ) | **DECLARATORY AND** |
| capacity as Montana Commissioner of ) | **INJUNCTIVE RELIEF** |
| Political Practices, ) | |
| ) | |
| Defendant. ) | |

**<u>VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF</u>**

Comes now Plaintiff Convention of States Political Fund ("CSPF"), by and through undersigned counsel, and states as follows:

1.      Plaintiff CSPF is a Michigan political committee that, in the 2022 election cycle, is making independent expenditures supporting state legislative candidates in Montana. It has only two goals. First, it wants to continue those expenditures. Second, it wants to comply with Montana's campaign finance reporting requirements. CSPF seeks declaratory and injunctive relief because Montana's campaign finance enforcement agency, the office of the Commissioner of Political Practices (the "COPP"), could not settle on an interpretation of its vague rules for filing by non-resident committees. COPP now seeks to punish CSPF—which relied on COPP's own advice—with crushing fines and penalties.

2.      Three months ago, long before making any Montana expenditures, CSPF reviewed Montana's statutes, regulations, and informal guidance and determined that the filing requirements

for non-resident (out of state) committees are vague and unclear. Under Montana law, CSPF saw, a wrong guess could potentially expose it to ruinous penalties: triple the total of all of its spending in Montana, and triple the total of all of its contributions nationwide—even though it did not solicit any money to spend in Montana. CSPF was aware of COPP's national reputation for strict but unpredictable enforcement of vague campaign finance laws and rules. Therefore, postponing its First Amendment-protected political speech, CSPF diverted some of the money it had earmarked for that speech to instead hire campaign finance counsel of national repute. Perhaps, CSPF reasoned, campaign specialists could confer with and obtain guidance and certainty from COPP.

3.      Counsel conferred with a COPP representative via telephone at length on April 25, 2022. CSPF fully disclosed its plans. In particular, CSPF asked COPP about its rule that non-resident committees may file their own state's reports in Montana, and that "[s]uch reports need to be filed only for periods in which the committee makes expenditures and contributions in elections in Montana." A.R.M. 44-11-305(2)(a). Which "periods," CSPF asked, did this refer to— Montana's or the home state's? In response, COPP advised CSPF that CSPF could file its home-state Michigan forms in Montana during the time periods when Michigan's forms are due. Michigan's reports are due quarterly; Montana's monthly. The parties specifically discussed that on the Michigan quarterly timeline, the first report would be due on July 25, 2022, rather than on the 30th day of May, the month when the spending was anticipated and the date when a report would be due were Montana's deadlines followed. COPP also advised CSPF that it could file copy of its statement of organization with its first report, on July 25, 2022. In reliance, CSPF ran independent ads in Montana the following month, in May, and gathered its invoices for a July 25th report in Michigan and Montana.

4.      COPP did not wait long to act. On May 26, 2022, CSPF was promptly faced with a claim from COPP that it was actually required to register as a Montana Political Action Committee ("PAC") and that it was already late in filing its statement of organization. CSPF protested, reminded COPP of its recent advice, and fully disclosed its spending, even producing every single invoice and the current version of its Michigan report, due to be filed there (and in Montana) on July 25, 2022. In response, COPP bobbed and weaved through multiple inconsistent interpretations of Montana's vague non-resident committee law. COPP's one consistent position was that CSPF would have to pay a hefty fine to "settle" the complaint.

5.      While the parties were still conferring, on June 16, 2022, COPP unexpectedly issued a "Finding of Sufficient Facts to Support a Campaign Practice Act Violation" (hereafter, the "Notice of Violation"). COPP immediately referred its findings to the County Attorney of Lewis and Clark County for criminal prosecution. The County Attorney declined to prosecute, returning the issue to the jurisdiction of COPP.

6.      Now, despite full awareness of the facts, COPP continues to threaten to bring a civil enforcement proceeding and seek potentially hundreds of thousands of dollars in fines for only $125,000 in fully-disclosed spending, all due to CSPF's decision to rely on COPP's advice by making its Montana filings pursuant to Michigan's deadlines. COPP now contends that nonresident PACs like CSPF must (1) file a statement of organization within five days of making an expenditure, rather than when its first report is due to COPP and (2) that nonresident PACs must file expenditure reports at least as frequently as in state PACs. For purposes of this Complaint, these two requirements are collectively referred to as the "Nonresident Disclosure Requirements."

7.      The Nonresident Disclosure Requirements do not appear on the face of the rule. Indeed, the Nonresident Disclosure Requirements were apparently unknown even to COPP in

April 2022. If the vagueness of the statutes and rules as applied to nonresident PACs prevents even COPP from consistently interpreting and applying the rules—even when engaged in a detailed discussion with sophisticated counsel hired at citizen expense—they cannot pass constitutional muster. That is even clearer in this context, where a violation is potentially criminal conduct and results in crippling, punishing penalty "fines" that are several times the cost of the subject advertisements.

8.     Until this First and Fourteenth Amendment-offending vagueness is remedied as applied to CSPF, CSPF cannot be certain that COPP will not once again change its position. It therefore seeks relief from this Court. Having obtained that relief, it will resume its political speech in Montana, and will make all filings required by law. First, COPP's "gotcha" method of campaign finance enforcement must be called out and repudiated.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this case pursuant to each of the following:

a.     28 U.S.C. § 1331, as the action arises under the First and Fourteenth Amendments to the United States Constitution;

b.     28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution;

c.     28 U.S.C. § 1343(a)(4), in that it seeks to recover nominal damages and secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; and,

d.      28 U.S.C. § 2201(a), in that it seeks to secure declaratory relief; and 28

U.S.C. § 2202 in that it seeks to secure preliminary and permanent injunctive relief.

10.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) in that

the Defendant is situated in Helena, Montana, which is within this judicial district.

**PARTIES**

11.     Plaintiff Convention of States Political Fund ("CSPF") is a political committee

organized and operated under the laws of Michigan. Its mailing address is at 500 New Jersey NW,

#375 Washington, D.C. 20001 in Washington, D.C., but its home state is Michigan. The D.C.

mailing address is the office of one of CSPF's attorneys, Godfrey & Kahn. CSPF raised no money

for spending in Montana, but it did spend some of its funds in Montana. It makes independent

expenditures in states other than Michigan, including Montana. Relative to Montana, CSPF is a

nonresident political committee.

12.     Defendant Jeffrey Mangan is the Montana Commissioner of Political Practices and,

in that capacity, has statutory authority to investigate and prosecute potential violations of Montana

campaign finance law. Mont. Code Ann. § 13-37-128. Under the auspices of that authority, Mr.

Mangan signed COPP's Notice of Violation alleging that CSPF has violated Montana campaign

finance law. Mr. Mangan is named in his official capacity only. COPP is located and can be found

in Helena, MT, which is within this District.

**BACKGROUND FACTS**

**A.  Montana's Nonresident Disclosure Requirements are not a Model of Clarity.**

13.     Montana imposes stringent requirements on groups that engage in political speech

in the state.

5

14.    A "political committee" means a combination of two or more individuals or a person other than an individual who receives a contribution or makes an expenditure:

> (i)   to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination;
> (ii)  to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue; or
> (iii) to prepare or disseminate an election communication, an electioneering communication, or an independent expenditure.

> (b)   Political committees include ballot issue committees, incidental committees, independent committees, and political party committees.

Mont. Code Ann. § 13-1-101(30)(a).

15.    A resident political committee must file a statement of committee organization with COPP within 5 days of making an expenditure. Mont. Code Ann. § 13-37-201(2)(b).  Resident political committees must also file reports at least monthly during an election year. Mont. Code Ann. § 13-37-226(2)(b).

16.    Montana law treats nonresident political committees differently.

17.    The legislature directed COPP to develop rules for nonresident committees. See Mont. Code Ann. 13-37-227 ("The commissioner shall adopt rules under which committees filing periodic reports with the federal election commission and committees headquartered outside the state of Montana shall report in accordance with this title.").

18.    COPP adopted a rule—ARM 44.11.305—which governs the reporting and disclosure requirements for nonresident (and federally filing) committees. Relevant to nonresident committees, that rule states:

> (2) Committees headquartered outside the state of Montana that are not federally filing committees and that make expenditures and contributions in elections in Montana may satisfy the requirements of the Montana Campaign Practices Act in one of two ways:

(a) if the committee files reports with a state officer in its home state, the commissioner may accept copies of such reports in satisfaction of the requirements of the Montana Campaign Finances and Practices Act if those reports fully disclose the source and disposition of all expenditures and contributions used in elections in Montana. Such reports need to be filed only for periods in which the committee makes expenditures and contributions in elections in Montana. A copy of a statement of organization or equivalent statement shall accompany the first such report, and copies of any amendments thereto shall be filed with the commissioner as they occur.

(b) if a nonresident committee cannot satisfy the requirements set forth in (a), it shall file reports on Montana forms for the periods in which the committee makes expenditures and contributions in elections in Montana. Such reports shall contain the information required by 13-37-229 through 13-37-232, MCA, and these rules.

19.     The plain language of the rule provides two options for nonresident committees to satisfy the filing requirements. Rule 44.11.305(2) ("Committees headquartered outside the state of Montana that are not federally filing committees and that make expenditures and contributions in elections in Montana may satisfy the requirements of the Montana Campaign Practices Act in one of two ways.").

20.     The "First Option" under ARM 44.11.305(2)(a) allows the nonresident committee to file its home state report so long as that report "fully disclose[s] the source and disposition of all expenditures…used in elections in Montana."

21.     The First Option, however, does not specifically address *when* the report must be filed, and instead relies on the concept of a "period," without stating which state's law supplies the period: "Such reports need to be filed only for periods in which the committee makes expenditures… in elections in Montana." *Id.*

22.     Thus, based solely on the text of the First Option, it is an open question as to whether: (a) non-residents need to file their home-state reports in Montana for the reporting periods in their home state, at the same time they file their home-state reports; or whether, alternatively,

(b) non-residents need to watch for Montana's reporting deadlines, and then file whatever incomplete version of their home-state report is available at the time the Montana report is due. Common sense, ease of compliance, and Montana's apparent object of avoiding needlessly duplicative paperwork would seem to suggest (a) is the right answer, but the text is vague.

23.     Also under the First Option, a nonresident committee's statement of organization is due at the same time its first home state report is filed with COPP. See *Id.* ("A copy of a statement of organization or equivalent statement shall accompany the first such report…").

24.     The "Second Option" under ARM 44.11.305(2)(b) requires the nonresident committee to make its reports on Montana forms, but only if it cannot meet the requirements of the First Option. If a nonresident committee must utilize the Second Option, its reporting "shall contain the information required by 13-37-229 through 13-37-232, MCA, and these rules." *Id.* The rule does not specify the operative "requirements" under ARM 44.11.305(2)(a) which must be met to avoid having to file on Montana forms using the Second Option.

25.     Based on COPP's Notice of Violation and as discussed further below, Commissioner Mangan has interpreted these rules to require that nonresident political committees must (1) file a statement of committee organization within 5 days of making a Montana expenditure, regardless of when its first expenditure report is otherwise due, and (2) file expenditure reports at least as frequently as Montana law requires, even if its home state requires less frequent reporting. Collectively, Plaintiff refers to these requirements as the "Nonresident Disclosure Requirements." In so referring, Plaintiff does not concede that this interpretation is correct or that it comports with Montana law, but only that COPP is attempting to enforce this interpretation against CSPF in this case.

26.     The Nonresident Disclosure Requirements do not appear on the face of the applicable rule or statute.

27.     There are sound reasons for a reasonable person to believe the Nonresident Disclosure Requirements are inconsistent with the rule and statute. For example, the legislature clearly did not intend for nonresident committees—which already make a full set of disclosures in their home state, and potentially in other states as well—to have to satisfy the exact same filing requirements as in-state committees. Had it so intended, the legislature could either have explicitly said so, or it could have altogether omitted the category of non-resident committees, requiring all who raise or spend money in Montana to become Montana committees and file the same reports and at the same times as Montana committees. Instead, the legislature clearly directed that the "commissioner *shall* adopt rules under which committees filing periodic reports with the federal election commission and committees headquartered outside the state of Montana shall report in accordance with this title." Montana Code Ann. § 13-37-227 (emphasis added). Had the legislature intended to subject non-residents to duplicative filing in Montana that precisely matches Montana filing requirements, this mandatory direction to the Commissioner to adopt rules would have been unnecessary.

28.     Additionally, there is reason to believe that the legislature did not believe non-resident committees would be required to file at precisely the same times as Montana committees. The same statute which requires monthly reporting by resident political committees specifically *exempts* non-resident committees. *See* Montana Code Annotated § 13-37-226(2)(b) ("Except as provided in 13-37-206, 13-37-225(3), and 13-37-227…"); *see also* 13-37-227 (directing COPP to adopt rules for nonresident committees). Thus, nothing in Montana statute requires that non-resident and federal committees (those subject to 13-37-227) file on a monthly basis.

29.     Additionally, there is no prior decision of COPP, and there is no reported court decision, in which non-resident committees were found to be subject to the monthly reporting deadlines of Montana, rather than to the reporting deadlines of their home states.

30.     Two COPP enforcement decisions against federally-reporting Republican groups from the summer of 2021 suggest that CSPF's position, rather than COPP's latest interpretation, is the correct way to understand ARM 11.44.305(2)(a). In *Luckey v. Republican Governors Association, et al.*, (COPP No. 2020-CFP-048B), the RGA's Right Direction PAC had stumbled in attempting to comply with Montana's out-of-state rules in ARM 11.44.305. Montana's rule for federally-reporting groups is similar to the rule for non-resident groups. The PAC filed its federal quarterly reports in Montana, and they lacked sufficient detail. COPP first found that Montana PACs are required to file monthly reports. *Id*. at 21. However, it then continued:

> Nonresident and federally filing committees whose reports "fully disclose the source and disposition of all contributions and expenditures used in elections in Montana" may file copies of "such reports in lieu of the periodic reports prescribed by the Campaign Finances and Practices Act," 44.11.305(1)(a), ARM. As previously discussed, however, RGA Right Direction PAC did not "fully disclose the source and disposition of all contributions and expenditures used in elections in Montana" on federal finance reports forwarded to the COPP. This means the committee was required to follow Montana's periodic financial reporting requirements prescribed under Mont. Code Ann. § 13-37-226(2)(b).

*Id*. at 22.

31.     Thus, COPP's message in *Luckey* is that the Montana deadlines do not automatically apply; they apply only where the out-of-state reports do not provide sufficient detail to be used, which lack of detail is what requires the committee "to follow Montana's periodic financial reporting requirements…" *Id*.

32.     COPP's analysis in *Luckey* was not an isolated slip. In *Rankin v. Republican Attorney General Association, et al*. (COPP No. 2020-CFP-057A) COPP engaged in exactly the

same analysis. Once again, it was not that out-of-state groups must automatically file using Montana's periods. Rather, out-of-state groups were required to file using Montana's periods only where they were required to report on Montana forms because their out-of-state forms did not provide sufficient detail. *Id*. at 14-15.

33.     Finally, COPP has issued no formal guidance stating that non-resident committees must always file their home-state reports in Montana for Montana's scheduled periods, rather than for the periods that match with their home-state reports. Nor has COPP issued any formal guidance stating that the portion of ARM 44.11.305(2)(a) expressly allowing home-state Statements of Organization to be filed along with the first home-state report has been abrogated, or that non-resident PACs must file their home-state Statement of Organization within five days of spending money in Montana.

34.     In short, ARM 44.11.305(2)(a) is at the very least vague. A reasonable person acting as a non-resident committee has no notice, and no reason to believe, that if they are able to choose the option of filing their own state reports, they must file them on Montana's deadlines rather than on the deadlines for which their own state reports are designed.

**B.  CSPF's Good Faith Efforts to Comply with Montana's Nonresident Disclosure Requirements before Making Independent Expenditures in the State.**

35.     Given the vagueness of statutes and rules governing nonresident disclosure, CSPF wanted to ensure that it understood the requirements and COPP's interpretation of them before making any expenditures.

36.     On April 25, 2022, an attorney for CSPF, Parker Conover, called COPP to inquire as to COPP's interpretation of the nonresident disclosure requirement statutes and rules. His

questions specifically included the periods and deadlines for when CSPF would need to file its Michigan reports with COPP.

37.     CSPF and Conover were particularly interested in the timing requirements because CSPF's home state—Michigan—requires only quarterly reporting for PACs located there, MCL 169.233(3), while Montana law requires nearly monthly reporting for PACs located in Montana when making expenditures in an election year. Mont. Code Ann. § 13-37-226(2)(b).

38.     Conover gave the COPP representative that answered the phone the relevant background regarding CSPF's state of residence and planned expenditure activities. Conover then asked the representative when CSPF's reports would be due, given that it is a nonresident PAC and Michigan only requires quarterly reporting.

39.     Conover told the COPP representative that he wanted to be sure that COPP did not read its rule to require CSPF to file more frequently than the quarterly reporting required in Michigan.

40.     The COPP representative read the relevant rule (ARM 44.11.305) aloud to Conover. The COPP representative then stated that the rules did not specify when the nonresident report was required to be filed in Montana.

41.     Conover followed up by asking if that meant that CSPF could submit its Michigan report to Montana at the same time that it submitted it to Michigan, that is, quarterly.

42.     The COPP representative replied and said that CSPF would be in compliance with the Montana rule if it submitted its Michigan report to Montana at the same time that it submitted the report to Michigan.

43.     Given the disparity between the Michigan and Montana reporting deadlines and for the sake of clarity, Conover emphasized to the COPP representative that her interpretation would

12

result in CSPF filing quarterly reports in Montana as opposed to the nearly monthly reports required by Montana resident PACs.

44.     The COPP representative confirmed that CSPF should file quarterly in accordance with the Michigan schedule and also stated that CSPF's Statement of Organization would be due when it filed its first Michigan report in Montana.

45.     That first report is due on July 25, 2022 under the Michigan quarterly reporting schedule. MCL 169.233(3)(b).

**C.  CSPF's Independent Expenditures in Montana.**

46.     Relying on the information provided by COPP, CSPF began to make independent expenditures in Montana on May 2, 2022 when it paid for candidate research, some of which was related to Montana candidates.

47.     Throughout May 2022, CSPF made various independent expenditures in Montana in support of three candidates. Those independent expenditures were primarily for radio ads and mailers.

48.     The independent expenditures were made between May 2nd and May 24th and totaled $121,314.50.

49.     CSPF's last report in Michigan was due and filed on April 25, 2022 covering all expenditures through April 20, 2022. Because the Montana spending did not occur until after that date and based on the information provided by COPP, CSPF understood that it would need to report these expenditures by filing a copy of its next Michigan report with COPP. That next report is due on July 25, 2022.

**D. The Complaint against CSPF for Inadequate Attributions and CSPF's Continued Good Faith in Speedily Resolving the Issue.**

50.     Montana law allows any person who believes a campaign finance violation has occurred to file a written complaint with the Commissioner. Mont. Admin. R. 44.11.106(1). "[U]pon receipt of a complaint, the commissioner shall investigate the alleged violation" and "prepare a written summary of facts and statement of findings." *Id*. 44.11.106(3).

51.     On or about May 20, 2022, Von Dailey of Florence, MT filed a Campaign Finance and Practices Complaint against CSPF and Wayne Rusk alleging that CSPF failed to include a return address or identify the name of its treasurer on a mailer it sent in support of Rusk's candidacy for the Montana House of Representatives. A true and correct copy of that complaint is attached hereto as Exhibit A.

52.     A copy of the subject mailer was included with the complaint. That mailer included a disclaimer that said: "Paid for by Convention of States Political Fund. Not authorized by any candidate or candidate's agent." See Ex. A. COPP received the complaint on May 23, 2022. *Id.*

53.     On May 25, 2022, COPP sent email correspondence to CSPF notifying it that the complaint had been received by COPP. The email informed CSPF that the COPP believed the attribution complaint was merited, as the material mentioned by the complaint did not appear to contain the full 'paid for by' attribution message as required because it omitted the return address of the committee. COPP provided CSPF two (2) business days to bring the unattributed material into compliance.

54.     On May 26, 2022, COPP spoke via telephone regarding the complaint and the attribution remedy process with Parker Conover, an attorney representing CSPF.

55.     That very same day, CSPF, through attorney Parker Conover, emailed COPP a formal response to the attribution complaint. The response included copies of eighteen (18) mailers

supporting three (3) Montana candidates—Wayne Rusk, Jason Ellsworth, and Ross Fitzgerald—including a copy of the individual mailer noted in this complaint. The response indicated that CSPF "has already completed the dissemination of these materials. CSPF will include the proper disclaimer and attribution on all subsequent materials". Each mailer included with the response contained an attribution message of "Paid for by the Convention of States Political Fund. Treasurer Richard Johnson. 500 New Jersey NW, #375 Washington, D.C. 20001" that had not been included on the material as originally distributed. This corrective action occurred within less than 24 hours of CSPF's discussions with COPP.

56.    Under Montana law, the respondent charged with the attribution deficiency is relieved of a campaign practice violation, provided it promptly carries out the attribution correction as provided by statute. As COPP later noted in its Notice of Violation, CSPF met these duties by accepting responsibility for attribution oversight on election communications and providing COPP with corrected copies of the unattributed communications that include full attribution messaging.

57.    CSPF was therefore relieved of a campaign practice violation under §13-35-225(6), MCA.

### E.  CSPF's Good Faith Efforts to Resolve Other Concerns Raised by COPP.

58.     Despite the quick and easy resolution of the attribution issue in late May 2022, COPP also decided to take a second look at CSPF's committee status and filing requirements, something it claims it was required to do by §13-37-111(2)(a), MCA.

59.    Nothing had changed between COPP's initial April 25 advice and its second interaction with CSPF May 25, except that by late May 2022, COPP knew the identity and political party of the candidates CSPF had supported, and the content of CSPF's political speech.

60.     Thus, CSPF was shocked to find the following statement tucked into COPP's original May 25, 2022 notice to CSPF of the attribution complaint:

> COPP records indicate that Convention of States Political Fund has not registered as a political committee in the State of Montana by filing a C-2 Statement of Organization with the COPP. Based on the material/s referenced in this Complaint, the Commissioner determines that Convention of States Political Fund is required to register as a political committee by filing form C-2. This action need be completed on or before Friday, May 27, 2022 at 5:00 PM.

*See* May 25, 2022 Notice, a true and correct copy of which is attached hereto as Exhibit B.

61.     CSPF, surprised at this about-face, immediately called COPP through counsel, Parker Conover, on May 26, 2022. Conover reached COPP staffer Scott Cook, a different member of COPP staff than the person with whom Conover had spoken on April 25, 2022.

62.     Cook advised Conover that in COPP's view, CSPF was a Montana committee and had to immediately file as a Montana committee the next day—including by filing a statement of organization that, by May 27, would already have been late.

63.     CSPF, through counsel, responded by letter later that day, memorializing the conversation:

> …Second, find attached draft copies of our forthcoming Michigan report as of today. This report is not due in Michigan until the end of this calendar quarter. As the highlighting indicates, the report includes expenditures relating to Montana elections and discloses the amount, payee, payee's address, and the candidate identified in the materials.
>
> Your letter asserts that COSPF qualifies as a Montana political committee and must register and report as such. We respectfully disagree. COSPF is a nonresident committee that files reports with the Michigan Secretary of State's Bureau of Elections and is subject to Montana nonresident committee reporting as described in Montana Administrative Rule 44.11.305(a) and (b). Pursuant to this Rule, COSPF plans to submit its Michigan reports – the first of such reports will include COSPF's Michigan statement of organization – to Montana at the same time COSPF submits them to Michigan. This generally occurs on a quarterly basis except for some 48-hour reports relating to contributions received during certain calendar periods.

In an effort to ensure compliance, COSPF contacted COPP on April 25, 2022, to confirm the reporting requirements and schedule for nonresident committees. **During this telephone conversation, COPP confirmed that COSPF should submit its Michigan reports when COSPF submits the reports to Michigan. COPP staff was clear that this reporting schedule would result in COSPF submitting quarterly reports to COPP.**

**Per phone conversation with Mr. Scott Cook on May 26, 2022, we understand that there is a difference in opinion among COPP staff regarding nonresident committee reporting.** Please advise us as to the proper reading of the Montana Rule as it relates to nonresident committees.

COSPF is prepared to submit any and all reports in the form and on the schedule that COPP requests. As indicated, COSPF is already disclosing all of its activities, so any timing concerns can be remedied quickly.

*See* CSPF May 26 Response and Draft Michigan Report, attached hereto as Exhibit C (emphasis added).

64.     The Michigan report CSPF included with its May 26 letter showed that it had made fifteen (15) independent expenditures for 18 election communications intended to support candidates Rusk, Ellsworth, and Fitzgerald, beginning May 5, 2022, totaling $121,314.50. CSPF also included a copy of its Michigan Committee Statement of Organization as filed in the state of Michigan with this response.

65.     On June 6, 2022, the Montana Free Press published an article discussing CSPF and the attribution complaint against it. The article included links to FCC records indicating that CSPF had purchased radio advertisements in Montana, beginning May 10, 2022, at a total cost of $14,400.00 using vendors KGVO-FM and CBQ Media LLC.

66.     On June 9, 2022, as part of its investigation into this complaint, COPP requested additional documentation from CSPF detailing its Montana election expenditure activity.

67.     On June 14, 2022, CSPF, through attorney Parker Conover, responded to this request by emailing COPP additional documentation detailing Montana election expenditure activity. The documents provided by CSPF included invoices showing that CSPF used four

vendors (Stormo & Associates, CBQ Media, Splice Audio LLC, Impact Advertising) for all of its Montana expenditure activity, including research, radio advertisements, and mailers. The June 14th production also included an updated draft copy of the "forthcoming Michigan report" due on July 25.

68.     CSPF acted in good faith in providing the requested documentation to COPP throughout the process of trying to understand and resolve what COPP viewed as other potential violations of Montana campaign finance law.

### F.     **Despite CSPF's Good Faith Efforts, COPP sent a Notice of Violation to CSPF on June 16, 2022.**

69.     On June 16, 2022, two days after CSPF provided this additional documentation, and while CSPF believed it was still in good-faith discussions with COPP to understand its interpretation of the Non-Resident Disclosure Requirements, COPP unexpectedly issued a 19-page "Finding of Sufficient Facts to Support a Campaign Practice Act Violation" ("Notice of Violation"). A true and correct copy of the Notice of Violation is attached hereto as Exhibit D.

70.     In this filing, COPP took what was now the third of several changing and inconsistent positions. First, on April 25, COPP had advised that CSPF could file its Michigan reports in Montana, on Michigan's deadlines, under ARM 44.11.305(2)(a). Second, on May 26, COPP had advised CSPF that it was really a Montana committee, and would have to file as such on Montana's deadlines using Montana's forms. Now, on June 16, 2022, CSPF received the third version of Montana's position.

71.     Because CSPF had mail directed to its attorney's address in Washington, D.C., COPP determined—incredibly—that CSPF was not really a Michigan committee, but was instead a Washington, D.C., committee that had failed to file Washington, D.C. reports. Because the draft

reports CSPF had sent Montana were from Michigan, and not from our nation's capital, COPP claimed that CSPF was in violation of the Nonresident Disclosure Requirements.

72.     COPP's Notice of Violation also identified a number of other alleged violations of Montana campaign finance law.

73.     First, COPP claimed that CSPF should have filed a statement of committee organization with COPP within 5 business days of making its first expenditure in Montana on May 2, 2022 but failed to do so:

> Under Montana campaign finance law, a political committee is required to file a Statement of Organization within 5 days of making an expenditure, Mont. Code Ann. § 13-37-201(2)(b). The Commissioner determines CSPF first became a political committee in the state of Montana on May 2, 2022, by making a reportable expenditure. Under Mont. Code Ann. §13-37-201(2)(b), and 44.11.305(2)(a), ARM, (discussed in more detail, below- *see Reporting Expenditures*), CSPF was required to either forward the COPP a copy of its home state Statement of Organization (in this case, Washington, DC) or directly register as a political committee in the state of Montana by filing a C-2 Statement of Organization no later than May 9, 2022, 5 business days after its initial Montana expenditure activity. CSPF did not take either action by May 9, 2022. CSPF failed to timely file a statement of organization, a Montana campaign finance and practice violation.

> <u>Sufficiency Finding of No. 1</u>: The Convention of States Political Fund failed to file a Statement of Organization as a political committee within 5 days of making an expenditure of $250 or more in a Montana candidate's campaign/s.

> The Commissioner finds there are sufficient facts to show the CSPF failed to file as a political committee in Montana upon incurring election activity in excess of $250. A nonresident committee that becomes involved in Montana elections cannot simply register in another state or jurisdiction without providing any copies or notice of this registration to COPP in the time and manner required by Montana law, as CSPF did in this matter.

See Ex. D at 10-11.

74.     COPP took this position despite the language in its own rule which clearly states that a nonresident committee's statement of organization is due based on when it files its first campaign finance report—not based on when it first spends money:

if the committee files reports with a state officer in its home state, the commissioner may accept copies of such reports in satisfaction of the requirements of the Montana Campaign Finances and Practices Act if those reports fully disclose the source and disposition of all expenditures and contributions used in elections in Montana. Such reports need to be filed only for periods in which the committee makes expenditures and contributions in elections in Montana. **A copy of a statement of organization or equivalent statement shall accompany the first such report,** and copies of any amendments thereto shall be filed with the commissioner as they occur.

ARM 44.11.305(2)(a) (emphasis added).

75.     Second, COPP next claimed that the advice it previously gave CSPF regarding the deadlines for filing reports was incorrect and that CSPF was required to have filed on the Montana monthly schedule, not the Michigan (or in its view at that time, the D.C.) quarterly schedule. See Ex. D at 11-16. COPP claimed that "CSPF became a political committee participating in Montana's 2022 elections on May 2, meaning the first required committee finance report was due on or before May 30, 2022." *Id.* at 11-12. This directly contradicted the advice that COPP had given CSPF just 45 days previously.

76.     COPP determined that CSPF could not file under the First Option (see p. 13) because, according to COPP, CSPF was a Washington, D.C., committee that had not filed a report in Washington, D.C. However, that was and is false: CSPF is not a Washington, D.C., committee and was never required to report there. Even COPP now admits this, and in later changes to its position, has admitted that its earlier argument regarding CSPF's state of residence is and was erroneous. However, because COPP was operating on this erroneous premise as of June 16, 2022, the Notice of Violation reflected that COPP did not think that the First Option for filing was available to CSPF, meaning that CSPF was required file on Montana forms and pursuant to Montana's deadlines.

77.     Based on this mistaken belief regarding CSPF's mailing address in D.C., COPP further alleged that CSPF violated Montana law by not filing reports on Montana forms in accordance with Montana deadlines:

> CSPF did not provide the COPP a copy of any committee finance report/s filed in Washington DC (CSPF's home state under 44.11.602(2)(a), ARM) disclosing its Montana expenditure or contribution activity on or before May 30, 2022, nor did CSPF use COPP's reporting forms to disclose its Montana contribution and expenditure activity on or before May 30, 2022.9 CSPF failed to timely file a committee finance report with the COPP on or before May 30, 2022 as required, a Montana campaign finance and practice violation.

> <u>Sufficiency Finding of No. 2</u>: The Convention of States Political Fund failed to file a political committee finance report on or before May 30, 2022 for its political spending in three (3) Montana candidate elections of a minimum $126,752.00 during the period of May 6 to May 24, 2022.

Ex. D at 14.

78.     COPP did not consider the Michigan draft reports provided by CSPF on May 26, 2022 and June 12, 2022 as meeting this filing requirement, as "[e]ach report was provided to COPP specifically as a ***draft*** finance report, subject to change, and has at no time been formally filed with the state of Michigan." *Id.* at 14, n.9.

79.     The Notice of Violation concluded by stating:

> CSPF is hereby ordered to file with the COPP as a Montana political committee and file committee finance reports for the period of May 5, 2022, through the date of this decision within 5 days of the receipt of this decision. CSPF shall follow all Montana reporting and disclosure requirements, including use of Montana's reporting forms if unable to meet these requirements using its home state (Washington, DC) forms. CSPF shall follow campaign finance reporting and disclosure laws for any future Montana political activity, including the proper and timely filing of political committee finance reports.

Ex. D at 16.

**G. CSPF's Continued Good Faith Efforts to Resolve COPP's Concerns raised in its Notice of Violation.**

80.     Though CSPF was blindsided by the Notice of Violation and its referral to the Lewis and Clark County Attorney for potential prosecution, it nevertheless continued to confer in good faith to understand and potentially rectify the issues raised by COPP.

81.     On June 21, 2022, CSPF submitted a letter to COPP responding to the Notice of Violation. A true and correct copy of that letter is attached as Exhibit E. That letter again included the mailers with the corrected disclaimers which had already been sent to COPP. It also included an updated draft of the forthcoming Michigan report detailing CSPF's Montana spending.

82.     The letter acknowledged that CSPF and COPP had different interpretations of what Montana law required of CSPF as a nonresident committee. Nevertheless, the letter requested COPP's direction as to what CSPF needed to do to bring itself in compliance and volunteered that CSPF "is prepared to submit any and all reports in the form and on the schedule that COPP requests. As indicated, C[]SPF is already disclosing all of its activities, so any timing concerns can be remedied quickly." *Id.*

83.     CSPF also met via telephone with Jamie MacNaughton, COPP general counsel, on June 21, 2022.  During that meeting, COPP dropped its assertion that CSPF was a Washington, D.C., entity and that it needed to have registered as a Montana committee.

84.     However, COPP maintained that CSPF needed to supplement its Michigan disclosure report and submit it according to Montana's filing deadlines.  COPP gave CSPF a deadline of June 30, 2022 to comply.

85.     MacNaughton presented to CSPF the COPP's fourth and final position: that CSPF was a Michigan committee, but that it needed to file either Michigan or Montana forms according

22

to Montana's statutory deadlines, because the "periods" referred to in ARM 11.44.305(2)(a) were Montana "periods" and not Michigan "periods."

86.     Notwithstanding the June 30th, deadline, CSPF's counsel continued to communicate with COPP, through Ms. MacNaughton, in an attempt to remedy the situation. CSPF's counsel spoke with Ms. MacNaughton on July 7, 2022 and again on July 11, 2022.

### H.  CSPF Files its Michigan Report, Submits a Copy to COPP, and Files this Lawsuit

87.     Unable to reach an agreement with COPP and facing a threat of large fines, on July 20, 2022, CSPF filed its Michigan report in Michigan, and then in Montana. It contained all of the detail regarding Montana expenditures that CSPF had previously provided to COPP, and that COPP had claimed was required under Montana law. A true and correct copy of that report as filed with the states of Michigan and Montana is attached hereto as Exhibit F.

88.     Under COPP's previous interpretation of ARM 11.44.305 in the *Rankin* and *Luckey* cases, as set forth above, a sufficiently detailed filing allows an out-of-state committee to file its home-state reports for the periods for which they are due in its home state, rather than filing incomplete home-state reports on the day Montana reports would be due. Put another way, it is only an insufficiently detailed home-state report that requires out-of-state committees to file on Montana forms for Montana periods. Thus, because CSPF filed its home-state reports providing all of the detail required by Montana, then under the plain text of ARM 11.44.305 and by analogy from *Rankin* and *Luckey*, they were not required to be filed by Montana's due dates, and there was no reason to threaten CSPF with enforcement and crushing fines and penalties.

89.     Notwithstanding CSPF's filing, however, COPP continued to claim that CSPF was out of compliance with Montana law because it had failed to comply with the Nonresident Disclosure Requirements: that is, the COPP would not retreat from its position that CSPF had

failed to file its report on Montana's—rather than Michigan's—due dates, and had not filed its statement of organization in early May 2022 when it had made its original expenditures.

90.     COPP also continued to assert that it was entitled to a six-figure fine, or at least a very substantial fine if CSPF capitulated. Under Montana Code Annotated 13-37-128(1), a person "who intentionally or negligently violates any of the reporting provisions of this chapter… is liable in a civil action brought by the commissioner… for an amount up to $500 or three times the amount of the unlawful contributions or expenditures, whichever is greater." COPP claims that every dollar CSPF has reported spending in Montana (just over $121,000) is therefore an "unlawful expenditure," potentially subjecting CSPF to over $363,000 in penalties.

91.     COPP also previously suggested that it might, at its option, choose to assess separate and additional penalties if CSPF does not settle and publicly accede to COPP's latest interpretation of Montana law. First, the COPP has claimed that additional penalties could be calculated based on trebling CSPF's *contributions* received, even though none of CSPFs' donors gave for purposes of spending in Montana, the donations were received from across the country, and they have been spent across the country and not primarily in Montana, as fully reported in CSPF's Michigan reporting. Second, COPP has claimed that CSPF's filing of its Michigan statement of organization along with its first report—rather than within five days of its first Montana expenditure—could be counted as a separate violation, requiring the assessment of even higher penalties.

92.     CSPF is thus faced with a threat of punishing fines in seemingly unpredictable and arbitrary amounts, based on Nonresident Disclosure Requirements that appear nowhere in any statute or rule. For that reason, the Nonresident Disclosure Requirements—which are now COPP's purported interpretation of ARM 44.11.305(2)—are void for vagueness. CSPF initiated this

lawsuit to protect itself against COPP's threats of arbitrary enforcement and assert its rights under the First and Fourteenth Amendments.

## COUNT I
## VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS: VAGUENESS
## (42 U.S.C. § 1983, et seq.)

93.     Plaintiffs restate and reallege the allegations in Paragraphs 1 through 92 as if fully rewritten verbatim herein.

94.     The First Amendment to the United States Constitution commands, "Congress shall make no law...abridging the freedom of speech…" and the speech protections of the First Amendment have been incorporated against the states. *See Gitlow v. New York*, 268 U.S. 652 (1925); *Stromberg v. California*, 283 U.S. 359 (1931).

95.     A vague regulation governing speech—like the Nonresident Disclosure Requirements – raises concerns under both the First and Fourteenth Amendments, with the former focused on the risk that constitutionally protected activity is chilled due to the fear of violating a vague prohibition on such activity, and the latter focused on fundamental due process concerns of fair notice and arbitrary enforcement.

96.     "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Laws that are impermissibly vague offend due process because they contravene two bedrock constitutional norms. *Id.* The first is that "regulated parties should know what is required of them so they may act accordingly." *Id.* The second is that laws must provide proper "precision and guidance" to ensure that "those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). When laws fail to "provide explicit standards for those who apply them," they

"impermissibly delegate[] basic policy matters . . . for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108–09.

97.     Vague laws thus stand in basic opposition to the rule of law. In evaluating whether a regulation is unconstitutionally vague, courts ask whether it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox*, 567 U.S. at 254 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

98.     For laws implicating First Amendment freedoms, the void-for-vagueness doctrine has special purchase. Although "perfect clarity is not required even when a law regulates protected speech," "vagueness concerns are more acute when a law implicates First Amendment rights, and, therefore, vagueness scrutiny is more stringent." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) and *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

99.     When a law implicating free speech is impermissibly vague, it risks repressing the very discourse that the First Amendment protects and encourages. *See Fox*, 567 U.S. at 253–54. As the Supreme Court has explained, when "a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (quotations and alterations omitted). A vague law governing speech also poses heightened risks of arbitrary enforcement, inviting disparate treatment of less popular speakers or viewpoints. *See NAACP v. Button*, 371 U.S. 415, 435 (1963) ("[A] vague and broad statute lends itself to selective enforcement against unpopular causes.").

100.    These concerns are magnified even further when a law regulates political speech, which "occupies the highest rung of the hierarchy of First Amendment values." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). Free and robust discussion on political issues and elections is "integral to the operation of the system of government established by our Constitution." *McCutcheon v. FEC*, 572 U.S. 185, 203–04 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)). Courts must therefore proceed with vigilance when evaluating a vagueness challenge involving laws that regulate political speech—speech that is entitled to the "broadest protection." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *Buckley*, 424 U.S. at 14).

101.    Consistent with these principles, courts, including the Ninth Circuit, have not hesitated to reject on vagueness grounds laws regulating speech protected by the First Amendment. *See, e.g.*, *Fox*, 567 U.S. at 258; *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048 (1991); *Hunt v. City of Los Angeles*, 638 F.3d 703, 712–13 (9th Cir. 2011); *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137–38 (9th Cir. 2000); *Foti v. City of Menlo Park*, 146 F.3d 629, 638–39 (9th Cir. 1998). This includes vague laws that regulate political speech. See, e.g., *Buckley*, 424 U.S. at 43–44; *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 843–44 (7th Cir. 2014); *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 284–85 (4th Cir. 2008).

102.    The Nonresident Disclosure Requirements are impermissibly vague both as written and as interpreted and enforced by COPP against CSPF.

103.    First, no statute or rule provides fair notice of the Nonresident Disclosure Requirements. As set forth in Paragraphs 25 to 34, what notice has been given would tend to cause a person of ordinary intelligence to believe that the Nonresident Disclosure Requirements do not exist.

27

104.     Second, ARM 11.44.305 fails to provide proper "precision and guidance" to ensure that "those enforcing the law do not act in an arbitrary or discriminatory way." As set forth above (see ¶¶70-71, 80-85), COPP took no fewer than four different positions regarding CSPF's reporting obligations, all on a set of very simple and basic facts. Indeed, COPP's first position was that the Nonresident Disclosure Requirements did not exist. Under that position, CSPF would be free to file an appropriately detailed Michigan report on the date that Michigan reports are due, and to file its Statement of Organization on that same date. Today, COPP's fourth position is that it is already too late, and that no matter what, CSPF is facing massive fines.

105.     Additionally, the only facts that changed between COPP's first position and its second position—when it claimed CSPF was a Montana PAC—was COPP's knowledge of the political party CSPF was supporting, and the content of its political speech. Since that time, COPP has threatened fines of hundreds of thousands of dollars—many multiples of the cost of CSPF's fully-disclosed speech—even though CSPF worked with COPP and jumped at its every request for information. Indeed, COPP now suggests that it can seek fines based on multiples of CSPF's nationwide contributions, even though they were not raised for or spent in Montana. It is unclear whether any objective factors—other than an entity's willingness to help COPP cover for its change of position—play a role in COPP's enforcement decisions. This is the very essence of arbitrary and discriminatory enforcement, and it is open to COPP because it takes shifting views of the word "periods" in its own administrative rule.

106.     As a result of the vagueness of the Nonresident Disclosure Requirements and COPP's interpretation and threatened enforcement of them, CSPF has already been injured. COPP's public accusations have been trumpeted by the media and CSPF's and its allied organizations' political opponents, harming CSPF's reputation as an entity that cares about the

rule of law and plays by the rules. See *Fox*, 567 U.S. at 256 (recognizing that "reputational injury provides further reason for granting relief to Fox" from FCC's vague rule regarding indecent conduct, even where it escaped a fine).

107.    Additionally, CSPF has stopped its Montana independent expenditures—its First Amendment protected political speech—due to the uncertainty arising from COPP's multiple inconsistent interpretations of the law. Further, the scale of Montana's threatened fines, which dwarf CSPF's Montana expenditures, has caused it to carefully consider its plans for political speech in the rest of the country as well.

108.    While CSPF ceases its Montana speech in the absence of certainty regarding its planned spending and reporting, and while it suffers continuing injury to its reputation due to media reporting on COPP's public accusations, it is suffering irreparable harm.

109.    COPP's vague Nonresident Disclosure Requirements were enacted under the color and pretense of state law. Plaintiff seeks to enjoin COPP, which acts as an agent of the State of Montana with the power to enforce the Requirements, from enforcing the Requirements under the color and pretense of state law in deprivation of Plaintiff's and Fourteenth First Amendment rights.

110.    In order to prevent further violation of Plaintiffs' federal constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. Pro. 57, declaring the Nonresident Disclosure Requirements to be void for vagueness pursuant to the First and Fourteenth Amendments.

111.    Further, pursuant to 28 U.S.C. § 2202, it is appropriate and is hereby requested that this Court issue preliminary and permanent injunctions enjoining Defendants and all of their agents and employees from enforcing the vague Nonresident Disclosure Requirements. Plaintiff intends to file a motion for preliminary and permanent injunctive relief in short order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Convention of States Political Fund respectfully prays for judgment in its favor and against Defendants and that the Court:

a. Pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, declare that the Nonresident Disclosure Requirements are void for vagueness under the First and Fourteenth Amendments to the United States Constitution;

b. Pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2202, and Fed. R. Civ. P. 65, preliminarily and permanently enjoin Defendants, their agents, employees, and all persons acting in active concert or participation with them, from enforcing the Nonresident Disclosure Requirements against Plaintiff, its agents, and others similarly situated.

c. Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiff its costs and expenses incurred in bringing this action, including its attorneys' fees.

d. Grant all other and further relief that the Court deems equitable, just, and proper.

Respectfully submitted this 22nd day of July, 2022.

**GALLUS LAW**
*/s/ Christopher Gallus*
1423 Otter Rd.
Helena, Montana 59602
Tel: (406) 459-8676
chrisgalluslaw@gmail.com


**GRAVES GARRETT LLC**

Edward D. Greim
*Motion for Admission Pro Hac Vice* Forthcoming
Graves Garrett, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Richard Johnson declare the following:

1.  I am the Treasurer of Convention of States Political Fund and am duly authorized to act as an agent on its behalf;

2.  I have personal knowledge of the matters alleged in this Complaint related to Convention of States Political Fund and could testify to the same on behalf of that organization if called as a witness in court; and

3.  The allegations of which I have personal knowledge are true and accurate.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of July, 2022.

_____
Richard Johnson
Treasurer, Convention of States Political Fund