IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CONVENTION OF STATES POLITICAL FUND, | CV 22–63–H–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| JEFFREY MANGAN, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendant. | |

Plaintiff Convention of States Political Fund—a Michigan political committee—sued Defendant Jeffrey Mangan in his official capacity as Montana Commissioner of Political Practices seeking declaratory and injunctive relief regarding campaign expenditure disclosure rules for nonresident political committees. Plaintiff alleges that the Commissioner's interpretation of the statutes and regulation that govern the reporting deadlines is unconstitutionally vague in violation of the First and Fourteenth Amendments. *See* Mont. Code Ann. §§ 13–37–201(2)(b), –226(2)(b), and –227; Admin. R. Mont. 44.11.305(2).

1

On August 2, 2022, Plaintiff filed a motion for preliminary injunction, (Docs. 6, 7), to which the Commissioner responded on August 16, (Doc. 20). Plaintiff filed its reply August 30. (Doc. 25.) A hearing was held on September 13, 2022. Prior to the hearing, the Court provided notice that because "[t]he issues raised by the complaint [a]re legal," *Slidewaters LLC v. Wash. St. Dep't of Labor & Indust.*, 4 F.4th 747, 760 (9th Cir. 2021), it "may advance the trial on the merits and consolidate it with the hearing," Fed. R. Civ. P. 65(a)(2). (*See* Docs. 14, 23.) Because the parties agree that consolidation is appropriate, this matter is consolidated under Rule 65(a)(2), and this decision is a final decision on the merits. At the September 13 trial, Plaintiff called one witness, M. Parker Conover (Plaintiff's regulatory counsel). Defendant called two witnesses: Commissioner Mangan and Compliance Specialist Three Scott Cook.

Ultimately, because Montana's disclosure rules are constitutional as applied to Plaintiff, judgment will be entered in favor of the Commissioner.

## BACKGROUND[1]

In May 2022, Plaintiff made various independent expenditures in Montana in support of three legislative candidates. (Doc. 1 at ¶¶ 47–48.) The principal

---

[1] The parties' stipulated exhibits were admitted at the September 13 trial and are attached to Doc. 29. The non-stipulated exhibits admitted during the trial are attached to Doc. 30. Although a number of the above exhibits appear multiple times in the record, citations herein are to Docs. 29 and 30. Page citations are to the page numbers associated with the docket entry.

defugalty is when Plaintiff, a nonresident political committee, was required to report its activities. Montana's disclosure obligations are outlined below, followed by a discussion of those activities.

## I.      Political Committee Expenditure Disclosure Rules

The parties agree that Plaintiff is a political committee engaged in campaign spending in Montana. *See* § 13–1–101(32) (defining "political committee"). They also agree that Montana's disclosure laws were enacted to foster transparency and put the public on notice of who is supporting particular candidates, causes, and ballot issues. And "[s]ince the 1970s, Montana has required political committees to register with the state, report election-related expenditures, and comply with additional requirements." *Butcher v. Knudsen*, 38 F.4th 1163, 1166 (9th Cir. 2022). The parties disagree, however, as to what those requirements are, specifically whether resident and nonresident political committees are subject to the same reporting deadlines.

### A.     Montana's Reporting Regime

Pursuant to § 13–1–101(32), a "political committee" is defined as "a combination of two or more individuals or a person other than an individual who receives a contribution or makes an expenditure . . . to support or oppose a candidate . . . [or] ballot issue" or "to prepare or disseminate an election communication, an electioneering communication, or an independent expenditure."

Political committees are then subject to heightened disclosure laws. *Butcher*, 38

F.4th at 1166. Two of those obligations are at issue here. First, under § 13–37–

201(2)(b), a political committee must file its organizational statement "within 5

days after it makes an expenditure or authorizes another person to make an

expenditure on its behalf, whichever occurs first." Second, a political committee

must regularly file expenditure reports, quarterly during nonelection years, *see*

§ 13–37–226(2)(a), and monthly during election years, *see* § 13–37–226(2)(b).

These disclosure deadlines are specifically tied to Montana's election cycle,

including its June primaries. While none of the above statutes distinguish between

resident and nonresident committees, § 13–37–227 mandates that the

Commissioner "adopt rules under which committees filing periodic reports with

the federal election commission and committees headquartered outside the state of

Montana shall report." Consistently, the Commissioner adopted Administrative

Rule 44.11.305(2), which provides:

> Committees headquartered outside the state of Montana that are not
> federally filing committees and that make expenditures and
> contributions in elections in Montana may satisfy the requirements of
> the Montana Campaign Practices Act in one of two ways:
>
> (a) if the committee files reports with a state officer in its home state,
> the commissioner may accept copies of such reports in satisfaction of
> the requirements of the Montana Campaign Finances and Practices Act
> if those reports fully disclose the source and disposition of all
> expenditures and contributions used in elections in Montana. Such
> reports need to be filed only for periods in which the committee makes
> expenditures and contributions in elections in Montana. A copy of a

statement of organization or equivalent statement shall accompany the first such report, and copies of any amendments thereto shall be filed with the commissioner as they occur.

(b) if a nonresident committee cannot satisfy the requirements set forth in (a), it shall file reports on Montana forms for the periods in which the committee makes expenditures and contributions in elections in Montana. Such reports shall contain the information required by 13-37-229 through 13-37-232, MCA, and these rules.

This regulation is the focal point of Plaintiff's lawsuit.

## B.   Plaintiff's Interpretation

Plaintiff argues that resident and nonresident political committees are treated differently under Montana law.  While resident political committees must file a statement of committee organization within 5 days of making an expenditure, § 13–37–201(2)(b), and file campaign spending reports monthly during an election year, § 13–37–226(2)(b), nonresident committees have two options for reporting under Admin. R. Mont. 44.11.305(2).  Under the first option ("Option (a)"), a committee can submit reports in the same manner and subject to the same deadlines used in its home state "if those reports fully disclose the source and disposition of all expenditures and contributions used in elections in Montana." Admin. R. Mont. 44.11.305(2)(a).  A copy of a committee's statement of organization is also due with the first report.  *Id.*  The second option ("Option (b)") is triggered "if a nonresident committee cannot satisfy the requirements set forth in (a)." Admin. R. Mont. 44.11.305(2)(b).  In that case, the nonresident committee

must meet the reporting requirements—both form and timing—of a resident Montana committee. *Id.* But ultimately, Plaintiff argues that even if the requirements elucidated by the Commissioner are the law of the land, Montana's statutes and regulations fail to provide "fair notice" to that effect. (Doc. 25 at 2.)

### C.   The Commissioner's Arguments

While conceding that Rule 44.11.305(2) can affect the *form* nonresident political committee disclosures may take, the Commissioner maintains that resident and nonresident political committees are subject to the same reporting *deadlines* of § 13–37–201(2)(b) and § 13–37–226(2)(b); i.e., a statement of organization is due within five days of a committee's initial campaign activity and expenditure reports are due on the 30th of each month. According to the Commissioner, Montana's statutory scheme provides notice of exactly what all political committees spending money on elections in Montana need to disclose and when. The Commissioner is correct.

## II.   Plaintiff's Activity

On April 25, 2022, Conover called the Commissioner's office to request guidance on Montana's disclosure requirements in anticipation of Plaintiff engaging in campaign spending in Montana. (*See* Ex. G-1, Doc. 29-31.) At the September 13 trial, Conover explained that he has represented between 35 and 50 political organizations over the last two years and that he regularly contacts the

campaign regulator in jurisdictions in which his clients make expenditures in order to clarify the disclosure laws. (*See id.*; *see also* Ex. G-2, Doc. 29-32.) He indicated, however, that he does not always receive clear guidance, and, in the face of uncertainty, his clients generally err on the side of caution and disclose. According to Conover, during his call to the Montana Commissioner, an unnamed staff member at the Commissioner's office recited Rule 44.11.305(2), confirmed that Plaintiff should file quarterly in accordance with the Michigan schedule, and stated that its statement of organization would be due when it filed its first Michigan report in Montana. Thus, under the Michigan quarterly reporting schedule, Plaintiff's first report would be due July 25, 2022. *See* Mich. Comp. L. § 169.233(3)(b).

On May 2, Plaintiff paid for candidate research, making its first independent expenditure in Montana. (Doc. 1 at ¶ 46.) Between May 2 and May 24, Plaintiff also spent approximately $120,000 on radio ads and mailers in support of three legislative candidates: Jason Ellsworth (SD-43), Ross Fitzgerald (HD-17), and Wayne Rusk (HD-88). (*Id.* ¶¶ 47–48.) That spending went unreported in violation of Montana election year reporting deadlines

## A.     The Attribution Complaint

Montana law allows any person who believes a campaign finance violation has occurred to file a written complaint with the Commissioner. Admin. R. Mont.

7

44.11.106(1). "[U]pon receipt of a complaint, the commissioner shall investigate the alleged violation" and "prepare a written summary of facts and statement of findings." *Id.* 44.11.106(3). If the Commissioner finds facts supporting a violation, he "shall notify the county attorney of the county in which the alleged violation occurred." § 13–37–124(1). "If the county attorney fails to initiate the appropriate civil or criminal action within 30 days," the Commissioner may do so. *Id.* "The Commissioner typically resolves cases through the payment of a negotiated fine. However, he may instead choose to file a complaint in court against the violator." *Butcher*, 38 F.4th at 1168 (citing § 13–37–124(4)).

On May 20, 2022, a Campaign Finance and Practices Complaint was filed against Plaintiff and candidate Wayne Rusk alleging that Plaintiff failed to include a return address or identify the name of its treasurer on a mailer it sent in support of Rusk's candidacy for the Montana House of Representatives. (*See* Ex. A, Doc. 29-26.) The mailer stated only: "Paid for by Convention of States Political Fund. Not authorized by any candidate or candidate's agent." (*See id.*) The Commissioner contacted Candidate Rusk, who indicated that he had no knowledge of the flyer. (Ex. 1, Doc. 29-1.) On May 25, 2022, the Commissioner contacted Plaintiff and notified it of the "attribution" complaint, indicating the complaint had merit and giving Plaintiff two business days to bring unattributed material into

compliance.[2]  (*See* Ex. B, Doc. 29-27.)  That letter further requested "information pertaining to the number of election material/s financed and distributed" by Plaintiff, "the date or dates such material/s were publicly distributed and the total cost," including "receipts, invoices, or similar documentation as provided from the vendor/s pertaining to all State of Montana election material/s . . . no later than Tuesday, May 31, 2022."  (*Id.*)  Finally, the letter stated that the Commissioner's records showed that Plaintiff "has not registered as a political committee in the State of Montana by filing a C-2 Statement of Organization with the [Commissioner] . . . . This action need be completed on or before Friday, May 27, 2022 at 5:00 PM."  (*Id.* at 3.)

The next day, Conover called the Commissioner and spoke to Compliance Specialist Scott Cook.  When Conover explained that the content of the May 25 letter was inconsistent with verbal direction he had received from the Commissioner's office in April, Cook referred Conover to the general political committee statute under Title 13 that requires filings on the 30th of each month.  *See* § 13–37–226.  Cook indicated that any previous contrary advice was incorrect.

Later that same day, May 26, Plaintiff emailed a formal response to the

---

[2] The Commissioner had some difficulty contacting the flier's sponsor.  The Commissioner indicated that he visited two websites, (*see* Exs. 32, 33, Docs. 30-6, 30-7), which led him to a Texas telephone number and email address, (Doc. 20-1 at ¶ 9).  Although the attribution complaint eventually reached Conover, (*see id.* ¶¶ 11–12), Conover testified that he does not recall how he became aware of it.

Commissioner, indicating that a number of noncompliant mailers had already been disseminated but that all subsequent materials would include the following attribution language: "Paid for by the Convention of States Political Fund. Treasurer Richard Johnson.  500 New Jersey NW, #375 Washington, D.C. 20001." (*See* Ex. 6, Doc. 29-6.)  Thus, Plaintiff remedied the conduct subject to the attribution complaint.  *See* Mont. Code Ann. § 13–35–225(6); (Ex. D, Doc. 29-28 at (finding the committee "relieved" of this violation)).  As it relates to the other issues raised in the Commissioner's letter, however, Plaintiff's May 26 response explained:

> Second, find attached draft copies of our forthcoming Michigan report as of today. This report is not due in Michigan until the end of this calendar quarter. As the highlighting indicates, the report includes expenditures relating to Montana elections and discloses the amount, payee, payee's address, and the candidate identified in the materials.

> Your letter asserts that [Plaintiff] qualifies as a Montana political committee and must register and report as such. We respectfully disagree. [Plaintiff] is a nonresident committee that files reports with the Michigan Secretary of State's Bureau of Elections and is subject to Montana nonresident committee reporting as described in Montana Administrative Rule 44.11.305[2](a) and (b). Pursuant to this Rule, [Plaintiff] plans to submit its Michigan reports—the first of such reports will include [Plaintiff]'s Michigan statement of organization—to Montana at the same time [Plaintiff] submits them to Michigan. This generally occurs on a quarterly basis except for some 48-hour reports relating to contributions received during certain calendar periods.

> In an effort to ensure compliance [Plaintiff] contacted [the Commissioner] on April 25, 2022, to confirm the reporting requirements and schedule for nonresident committees. During this telephone conversation, [the Commissioner's staff] confirmed that

[Plaintiff] should submit its Michigan reports when [Plaintiff] submits the reports to Michigan. [The Commissioner's] staff was clear that this reporting schedule would result in [Plaintiff] submitting quarterly reports to [the Commissioner].

Per phone conversation with Mr. Scott Cook on May 26, 2022, we understand that there is a difference in opinion among [the Commissioner's] staff regarding nonresident committee reporting. Please advise us as to the proper reading of the Montana Rule as it relates to nonresident committees. [Plaintiff] is prepared to submit any and all reports in the form and on the schedule that [the Commissioner] requests. As indicated, [Plaintiff] is already disclosing all of its activities, so any timing concerns can be remedied quickly.

(Ex. 6, Doc. 29-6.) Conover testified that because this letter sought written clarification from the Commissioner regarding nonresident disclosure deadlines, Plaintiff was waiting for a response before it took any further action. As a result, Plaintiff did not provide any more information to the Commission at that time. Nor did it satisfy the statutory reporting conditions, or request an advisory opinion or a declaratory ruling.

Following a June 6 article in the Montana Free Press about Plaintiff's alleged unreported radio advertising, (*see* Ex. 31, Doc. 30-5), the Commissioner contacted one of Plaintiff's vendors directly in an effort to discover more information about Plaintiff's expenditures, (*see* Ex. 12 at Doc. 29-12). When Plaintiff learned of that contact, Conover emailed the Commissioner on June 9, (*see* Ex. 13 at Doc. 29-13), and, on June 14, provided itemized invoices from its vendors, along with its "draft" Michigan report for July, (Ex. 7, Doc. 29-7). That

draft report was unsigned and did not itemize the expenditures.

**B.      Sufficiency Decision**

On June 16, 2022, the Commissioner issued a 19-page Findings of Fact Sufficient to Support a Campaign Practice Act Violation (the "Sufficiency Decision" or "Decision"). (Ex. D, Doc. 29-28.)  In the Decision, the Commissioner made a number of determinations regarding Plaintiff's expenditure disclosures.  First, the Commissioner found that Plaintiff failed to file a statement of organization within five days of its first expenditure as required by § 13–37–201(2)(b).  (*Id.* at 12.)  Second, the Commissioner determined that Plaintiff is headquartered in Washington, D.C., not Michigan, and that it failed to comply with Washington, D.C.'s campaign expenditure reporting requirements.  (*Id.* at 14.)  Third, the Commissioner found that Plaintiff was required to comply with the political committee reporting requirements under § 13–37–226, § 13–37–227, and Rule 44.11.305(2), but failed to do so.  (*Id.* at 14–17.)  Accordingly, the Commissioner found sufficient evidence to justify a civil fine or prosecution and referred the matter to the county attorney.  (*Id.* at 18.)  On June 19, the Lewis and Clark County Attorney waived enforcement back to the Commissioner.  (Doc. 20-1 at ¶ 19.)

On June 21, Plaintiff sent a response letter to the Commissioner outlining the history of their correspondence, insisting that it is a Michigan committee and that it

had not violated any disclosure requirements as it meant to comply with
Michigan's reporting timeline as it believed was contemplated by Rule
44.11.305(2)(a). (Ex. E, Doc. 29-29.) On June 22, Plaintiff's counsel emailed the
Commissioner again, this time to request examples of how to report as a
nonresident committee. (Ex. 8, Doc. 29-8 at 3.) The Commissioner's office
responded the next day, indicating there were not many examples as "most
committees just file as Montana committees." (*Id.* at 1.) Plaintiff did not,
however, "err on the side of caution" and disclose.

During a phone call around this same time, the Commissioner dropped its
assertion that Plaintiff was a Washington, D.C. committee and that it needed to
register as a Montana committee.[3] (Doc. 1 at ¶ 83.) The Commissioner
maintained, however, that the "periods" referred to in Rule 44.11.305(2)(a) were
Montana "periods" (i.e., monthly) not Michigan "periods" (i.e., quarterly), (*id.*
¶ 85), and Plaintiff needed to supplement its Michigan disclosure report and submit
it according to Montana's filing deadlines by June 30, (*id.* ¶ 84).

Ultimately, Plaintiff filed its Michigan report and organizational statement in
Montana on July 20, 2022, the same date it filed in Michigan. (*See* Ex. 16, Doc.
29-16.) The untimely reports did not comport with Montana's monthly reporting

---

[3] Mangan conceded—somewhat grudgingly—during the September 13 trial that
Plaintiff is a Michigan committee.

requirements. Even so, Plaintiff insists that it complied with Rule 44.11.305(2)(a). Plaintiff also emphasizes that it had never received a response to its May 26 letter asking for written clarification of its obligations under Montana law. In contrast, the Commissioner maintains that Plaintiff violated Montana law when it failed to file its statement of organization and expenditure reports under Montana's schedule, as outlined in §§ 13–37–201(2)(b) and –226(2)(b). Accordingly, Plaintiff may be subject to certain consequences. *See* § 13–37–128. In light of this disagreement concerning the statutory reporting obligations, Plaintiff has not engaged in any further expenditures in Montana.

## LEGAL STANDARD

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Butcher*, 38 F.4th at 1168 (quoting *FCC v. Fox. Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). "Laws that are impermissibly vague offend due process because they contravene two bedrock constitutional norms." *Id.* "The first is that regulated parties should know what is required of them so they may act accordingly. The second is that laws must provide proper precision and guidance to ensure that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* (quotation marks omitted). "In evaluating whether a law is unconstitutionally vague, [courts] ask whether it 'fails to provide a person of ordinary intelligence fair notice of what

is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* at 1169 (quoting *Fox*, 567 U.S. at 254); *see Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) ("A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.") (quotation marks omitted). "Although perfect clarity is not required even when a law regulates protected speech, vagueness concerns are more acute when a law implicates First Amendment rights, and, therefore, vagueness scrutiny is more stringent." *Butcher*, 38 F.4th at 1169 (quotation marks omitted). "These concerns are magnified even further when a law regulates political speech, which 'occupies the highest rung of the hierarchy of First Amendment values.'" *Id.* (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)).

Plaintiff clarified at the September 13 trial that this challenge is as applied, which means the present question is whether Montana's nonresident committee disclosure laws are unconstitutional as applied to Plaintiff's "particular speech activity, even though the law may be capable of valid application in others." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004) (quotation marks omitted).

**ANALYSIS**

According to Plaintiff, the question in this case is "whether ARM 44.11.305

15

. . . is unconstitutionally vague in informing nonresident political committees when they must file (1) a statement of organization and (2) periodic spending reports." (Doc. 25 at 5.)  The Commissioner insists that both the statutes and the Rule make clear that nonresident committees are "required to disclose th[eir] expenditures with the same level of information and on the same timeline that a Montana political committee is required to provide." (Doc. 20 at 18.)  The Commissioner has the better argument.  Fundamentally, Plaintiff's position requires Rule 44.11.305(2) to be read in a vacuum, without reference to the other provisions of Montana's campaign disclosure regime.  But such a reading is not supported by either the language or the purpose of Title 13.  To the contrary, Rule 44.11.305(2) must be read in the context in which it was created: as an implementing regulation for Title 13.

## I.    Section 13–37–227

Plaintiff's first argument regards the Montana Legislature's delegation of rule-making authority to the Commissioner pursuant to § 13–37–227.  As mentioned above, § 13–37–227 directs the Commissioner to "adopt rules under which committees filing periodic reports with the federal election commission and committees headquartered outside the state of Montana shall report in accordance with this title."  According to Plaintiff, "[t]his command would have been unnecessary if nonresident committees were simply deemed Montana committees

16

by operation of law and had to file exactly as if they were Montana committees."
(Doc. 25 at 6–7.)  To be sure, § 13–37–227 requires the Commissioner to
promulgate rules outlining reporting requirements for nonresident political
committees.  But the only specific direction for those requirements are that they be
"in accordance with [Title 13]."  Plaintiff's argument that § 13–37–227 is an
"express direction" for the creation of a completely separate regime for nonresident
committees is unavailing.  While § 13–37–227 permits the creation of distinct
reporting regimes for resident and nonresident political committees when the
reporting requirements are in essence mirrored to the Montana statutes, those
regimes may—as argued by the Commissioner—overlap.  The argument is
whether Rule 44.11.305(2) creates separate and inconsistent reporting
requirements for resident and nonresident political committees, creating an
ostensible regime advantaging out-of-state committees.

## II.    Rule 44.11.305(2)

The fundamental premise of the Commissioner's interpretation of Rule
44.11.305(2) is that it supplements—as opposed to supplants—the reporting
requirements of §§ 13–37–201(2)(b) and 13–37–226(2)(b).  Consistently, the
Commissioner argues that while a nonresident committee's report may use a
foreign reporting *form*, the reporting *deadlines* remain the same.  Plaintiff takes no
issue with the first half of this assertion: Montana accepts "copies" of reports filed

in other jurisdictions "if those reports fully disclose the source and disposition of all expenditures and contributions used in elections in Montana," Admin. R. Mont. 44.11.305(2)(a), otherwise "Montana forms" are required, Admin. R. Mont. 44.11.305(2)(b). Plaintiff claims it is the Commissioner's interpretation of the applicable deadlines, as stated in phone calls by two different staff persons responding to Plaintiff's questions, that causes consternation.

As an initial matter, Plaintiff does not challenge either the policy or purpose of campaign finance disclosures rules such as the one discussed here. And Plaintiff concedes that there is a stronger policy interest in subjecting out-of-state political committee campaign expenditures to more, as opposed to less, rigorous disclosure laws. (*See* Ex. 25, Doc. 29-25 at 4 (indicating § 13–37–227 was amended "to require the commissioner . . . to adopt *additional* rules relating to political committees . . . headquartered outside of Montana") (emphasis added).) It is also undisputed that a state has an interest in tethering its disclosure laws to its specific election cycle. *See Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1117 (9th Cir. 2019) ("[I]n valid electioneering disclosure laws, the frequency of required reporting . . . is tied to election periods or to continued political spending."). But while Plaintiff disputes neither the putative purpose of Rule 44.11.305(2) nor the constitutionality of its substantive requirements, it disputes whether the Rule is drafted so as to provide nonresident committees fair

18

notice of those obligations.  Ultimately, Rule 44.11.305(2) falls short of "perfect clarity." *Butcher*, 38 F.4th at 1169.  But when considered in the context of Title 13, Montana's disclosure regime "provide[s] a person of ordinary intelligence fair notice of what is" required of nonresident committees and is not "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* Indeed, the Commissioner has applied the Rule uniformly across the board.

A.    **Periodic Expenditure Reports**

Plaintiff's first challenge regards the deadline for periodic expenditure reports.  As discussed above, in an election year, Montana has a monthly schedule while Michigan's is quarterly.  Rule 44.11.305(2)(a) does not explicitly state that nonresident committee reports are subject to different reporting deadlines than those governing resident committees.  Plaintiff argues that the language that "the commissioner may accept copies of [home state reports] in satisfaction of the Montana Campaign Finances and Practices Act" also applies to the timing of such reports, not just their form.  The Commissioner disagrees, once again emphasizing that while the form for nonresident committees reports may be governed by Rule 44.11.305(2), the timing remains subject to the Montana schedule outlined in § 13–37–226(2)(b).  The Rule and statutory scheme gave Plaintiff "fair notice" of the Commissioner's interpretation.

The single reference to the timing of reports within the Rule is that "[s]uch

reports need to be filed only for periods in which the committee makes expenditures and contributions in elections in Montana." The Commissioner insists that "periods" refers to the monthly reporting schedule that governs all political committees in Montana, resident and nonresident alike. For example, if a nonresident committee made independent expenditures in May, July, and August, it would be required to submit expenditure reports by May 30, July 30, and August 30. *See* § 13–37–226(2)(b). Plaintiff, on the other hand, argues that "periods" correlates to the reports filed in a nonresident committee's home state, in this case Michigan. Under this interpretation, a committee that made the expenditures outlined above would only be required to submit two quarterly reports, one by July 25 and one by October 25. *See* Mich. Comp. L. § 169.233(3). But, contrary to Plaintiff's view, "periods" is tethered directly to Montana's reporting schedule. Section 13–37–226(6) provides that "a report required by this section must cover contributions received and expenditures made pursuant to the time periods specified in 13–37–228." Section 13–37–228, in turn, explicitly defines "periodic reports" in reference to the due dates outlined in § 13–37–226. Thus, the reference to "periods" in Rule 44.11.305(2) in the context of spending activity has a discrete meaning within the governing statutes of Title 13. *See Brumsickle*, 624 F.3d at 1021 ("[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity[.]" (quotation marks

omitted)).

Indeed, neither the language nor the regulatory history of Rule 44.11.305(2) supports the contention that it stands in isolation from Title 13. To the contrary, the delegation statute provides that the Rule must be "in accordance with" Title 13. § 13–37–227. This language puts a person of ordinary intelligence—let alone a political committee that complies with numerous, nuanced disclosure regimes— on notice that the Rule must be read in conjunction with the other relevant statutes. Moreover, where the Commissioner has chosen to abrogate Montana's monthly periodic reporting requirements, he has explicitly done so: Rule 44.11.305(1), which governs "federally filing committees," explicitly states that "the commissioner shall accept copies of such reports *in lieu of* the periodic reports prescribed by the Campaign Finances and Practices Act." (Emphasis added.) The presence of this language in Rule 44.11.305(1) implies its absence in Rule 44.11.305(2) is purposeful.

Finally, Montana's deadlines are appropriately tailored to Montana's election cycle. Here, for example, Plaintiff made an expenditure supporting a candidate prior to the June primary. Under Montana's deadlines, that expenditure would be disclosed prior to that primary vote. Under Michigan's deadlines, however, that disclosure was not made until a month and a half *after* the primary election had already occurred. Thus, the public was not informed of the

circumstances surrounding the candidates and their support during the relevant time period.  And, more generally, political committees could consciously avoid disclosure by forming in states with less stringent disclosure deadlines than Montana.  Both results undermine the very purpose of Montana's campaign disclosure laws.

Because the Rule—considered within the statutory scheme from whence it came—provided Plaintiff fair notice of Montana's reporting schedule, it is not unconstitutionally vague as applied here.

### B.    Organizational Statements

Rule 44.11.305(2) explicitly provides a deadline for a nonresident committee to file a statement of organization, stating that "[a] copy of a statement of organization or equivalent statement shall accompany the first such [expenditure or contribution] report[.]"  Plaintiff does not challenge this requirement substantively or facially.  When Plaintiff belatedly submitted its July 20 report, it included its statement of organization consistent with this Rule.  (*See* Ex. 16, Doc. 29-16.) What troubles Plaintiff is the Commissioner's insistence that a nonresident political committee must *also* file an organizational statement "within 5 days after it makes an expenditure" in Montana as required by § 13–37–201(2)(b).  But Plaintiff's objection improperly elevates a matter of mere administrative inconvenience into one of constitutional due process.  Under the plain language of

both § 13–37–201(2)(b) and Rule 44.11.305(2)(a), nonresident political committees must file their statements of organization at two separate times: (1) within five days of the committee's first expenditure activity and (2) with the committee's first monthly report.  That requirement is neither unclear nor subject to arbitrary enforcement.[4]  Because Plaintiff once again had fair notice of what was required of it, this challenge also fails.

Notably, the facts of this case demonstrate why Title 13 requires all political committees, including nonresident committees, to provide their statement of organization immediately after their first campaign activity.  The trial testimony made clear that the Commissioner had difficulty contacting Plaintiff when he first received the citizen complaint, requiring him to use "Google-fu" to try to find the organization and take shots in the dark at general contact information.  That entire saga could have been avoided if Plaintiff had filed its organizational statement consistent with § 13–37–201(2)(b).

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's motion (Doc. 6) is DENIED.  Montana's disclosure rules are constitutional as applied to Plaintiff and

---

[4] During his trial testimony, Mangan stated that the Rule required an organizational statement be filed with *each* report submitted by a nonresident committee. Counsel clarified on redirect, however, that the Rule only required such a filing with the *first* report.

the Clerk of Court is directed to enter Judgment in favor of the Commissioner and

close the case file.  *See* Fed. R. Civ. P. 65(a)(2).

DATED this 6th day of October, 2022.

13:49 P.M.

Donald W. Molloy, District Judge
United States District Court